UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL N.,[1] <br>     Plaintiff <br> v. <br> KILOLO KIJAKAJI, Acting Commissioner of Social Security, <br>     Defendant. | Case No. 5:21-cv-00530-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Daniel N. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before a United States Magistrate Judge [Dkts. 12 and 17] and briefs [Dkt. 19 ("Pl. Br.") and Dkt. 22 ("Def. Br.")] addressing disputed issues in the case.  The matter is now ready for decision.  For the reasons set forth below, the Court finds that this matter should be affirmed.

---

[1]   In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for DIB and SSI on July 26, 2018, alleging disability beginning on November 21, 2017. [Dkt. 14, Administrative Record ("AR") 15, 84, 110-11, 209-10.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 15, 112-16, 123-27.] A hearing was held before Administrative Law Judge Joel Tracy ("the ALJ") on June 1, 2020. [AR 15, 35-63.]

On June 24, 2020, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. [AR 15-29]; *see* 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. [AR 17.] At step two, the ALJ determined that Plaintiff has the following impairments, which are severe in combination: hiatal hernia with gastroesophageal reflux, carpal tunnel syndrome, residual effects of the left shoulder dislocations, status-post left shoulder arthroscopic capsular plication with labral repair and remplissage, and right shoulder glenhumeral instability. [AR 18.] At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations. [AR 20]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) and can frequently push/pull, handle and finger with the bilateral upper extremities and frequently reach overhead with the right upper extremity, but can never reach overhead with the left, non-dominant, upper extremity or climb ladders, ropes or scaffolds. [AR 21.] At step four, the ALJ determined that Plaintiff does not have past relevant work. [AR 27.] At step five, based on the vocational expert's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including representative jobs such as

material distributor, cleaner, and assembler. [AR 28.] Based on these findings, the ALJ found Plaintiff was not disabled through the date of the decision. [AR 29.]

The Appeals Council denied review of the ALJ's decision on January 28, 2021. [AR 1-6.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

> 1. The ALJ failed to properly evaluate the medical opinion evidence.
> 2. The ALJ failed to properly evaluate the testimony of Plaintiff and Plaintiff's father.

Defendant asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds the ALJ erred.

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("[s]ubstantial evidence is more than a mere scintilla but less than a preponderance") (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

404.1502(a), 416.902(a). However, the Court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination," or if despite the error, "the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. The Medical Evidence

Plaintiff contends the ALJ erred by finding the opinion of his orthopedist, Stephen Chow, M.D., only "partially persuasive." [Pl. Br. at 3-9.]

Dr. Chow began treating Plaintiff for left shoulder pain and instability in July 2017. [AR 454.] On November 21, 2017, Dr. Chow performed arthroscopic capsular plication surgery with labral repair and remplissage on Plaintiff's left shoulder.[2] [AR 462-63.] In December 2018, Dr. Chow reported that Plaintiff was doing well and experiencing less pain. [AR 434.] In July 2018, Dr. Chow noted that Plaintiff was still making progress after surgery but was reporting joint pain, weakness, and tenderness and showed positive atrophy and dyskinesia on examination. [AR 372, 374.] An MRI of Plaintiff's left shoulder from August 2018 showed a partial-thickness articular surface tear of the supra spinatus tendon proximal to its insertion, SLAP 3 tear superior/anterior glenoid labrum, low-lying acromion, small subcoracoid fluid collection, and two surgical tacks within the superior glenoid. [AR 359-60.] In January 2019, Dr. Chow diagnosed Plaintiff with

---

[2] The Court notes that Plaintiff's alleged onset date of disability, November 21, 2017, is the date Plaintiff underwent left shoulder surgery. [AR 84, 462.]

injury of brachial plexus, sequela and bilateral carpal tunnel syndrome. [AR 360.] Dr. Chow opined that Plaintiff should not lift, push, pull, or carry more than 5 pounds or use his left arm for overhead activity and should remain off work for three months. [AR 360.]

In February 2019, Dr. Chow completed an Upper Extremity Assessment. [AR 468-72.] He reported that Plaintiff experiences numbness, weakness, shoulder stiffness and constant pain in the left shoulder and bilateral hands and that Plaintiff's pain resulted in altered pain processing, decreased activity, difficulty with activities of daily living, difficulty driving, sleep dysfunction, and easy fatigability. [AR 469.] Dr. Chow opined that Plaintiff could occasionally lift and carry up to 10 pounds and occasionally use the right upper extremity to handle objects, perform fine manipulations, reach overhead or laterally, and push/pull, but he should never/rarely use the left upper extremity to handle objects, perform fine manipulations, reach overhead or laterally, or push/pull. [AR 470.] Dr. Chow also opined that Plaintiff would frequently experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration, would often need to take unscheduled breaks to rest during a workday, and would likely be absent from work more than three times a month. [AR 471-72.]

An ALJ must consider and evaluate the persuasiveness of all medical opinions. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).³ An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). In evaluating the persuasiveness of a medical opinion, the ALJ must consider its "supportability" (i.e.,

---

³     For claims filed on or after March 27, 2017, the ALJ will not "defer [to] or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

"the objective medical evidence and supporting explanations presented" by the medical source to support the medical opinion) and its "consistency" with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)-(2), 416.920c(b)(2), (c)(1)-(2). The ALJ may, but is not required to explain how additional factors, such as the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and understanding of the "disability program's policies and evidentiary requirements" were considered. 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(c)(5), 416.920c(b)(2), (c)(3)-(c)(5). However, if two or more medical opinions on the same issue are found "equally well-supported" and "consistent with the record," the ALJ must consider the additional factors. 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(c)(5), 416.920c(b)(3), (c)(3)-(c)(5); *see also Woods*, 32 F.4th at 792 (explaining that when two or more medical opinions are equally persuasive, the ALJ will articulate how the factors in addition to consistency and supportability were considered).

Here, substantial evidence supports the ALJ's evaluation of Dr. Chow's opinion. As to supportability, the ALJ found that Dr. Chow provided "very little explanation of the evidence relied on in forming [his] opinions" about Plaintiff's limitations. [AR 26, 468-72]; *see Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (holding that when a physician offers an opinion that is "brief, conclusory, and inadequately supported by clinical findings," the ALJ need not accept it) (internal quotation marks and citation omitted). The ALJ noted that "Dr. Chow did not document positive objective clinical or diagnostic findings to support" the assessment of Plaintiff's limitations. [AR 26.] When asked for clinical findings and test results supporting his opinion, Dr. Chow simply checked boxes and referenced a shoulder MRI and EMG, without explaining the basis for his conclusions. [AR 26, 468]; *see Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases

6

of their conclusions.") (internal quotation marks and citation omitted).  While the ALJ accepted that Dr. Chow's assessment was "partially supported" by his exam findings (*e.g.*, tenderness, dyskinesia, weakness, decreased range of motion, numbness in hands, instability in the right shoulder, atrophy, and reported symptoms), the ALJ noted that Dr. Chow prescribed "routine and conservative treatment."  [AR 24, 26-27, 398, 400, 402.]  After Plaintiff recovered from left shoulder surgery, Dr. Chow recommended only physical therapy, home exercises, and bracing.  [AR 329, 337, 366, 378-79, 426, 429, 432, 435, 438, 484.]  Plaintiff's conservative treatment was a proper basis for discounting Dr. Chow's opinion of Plaintiff's limitations.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (recognizing that "[a] conflict between treatment notes and a [ ] provider's opinion[] may constitute an adequate reason to discredit" the provider's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) (holding that the "incongruity" between a doctor's questionnaire responses and her medical records provides a legitimate reason for rejecting that opinion of the claimant's limitations); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("a conservative course of treatment, including a recommendation to 'avoid strenuous activities' … [is] not the sort of … recommendation[] one would expect to accompany a finding that [the claimant] was totally disabled").

      The ALJ also found that Dr. Chow's opinion was inconsistent with the evidence from other medical sources.  [AR 26]; *see* 20 C.F.R. § 404.1520c(c)(2), 416.920c(c)(2).  The ALJ noted that the treatment records from Plaintiff's other doctors revealed "mostly normal review of his musculoskeletal systems" and recommendations for only conservative treatment.  [AR 24-27, 322, 347, 498-99, 534.]  Dr. Ahluwalia consistently reported normal musculoskeletal and extremity exams.  [AR 24-25, 314, 347, 322, 514, 518, 523.]  In July 2019, Dr. Liu, reported that while Plaintiff had stiffness and decreased strength in his left shoulder and instability in his right shoulder, there was no misalignment, swelling, erythema,

ecchymosis or muscle atrophy in the left shoulder. [AR 24-25, 498-99.] Dr. Liu also noted that Plaintiff was progressing well after receiving a steroid injection. [AR 499]; *see Veliz v. Colvin*, No. EDCV 14-0180-JPR, 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (finding that a single steroid injection and medication did not undermine ALJ's finding that the claimant received conservative treatment); *Gonzales v. Comm'r of Soc. Sec. Admin.*, No. CV 14-0078-JPR, 2015 WL 685347, at *7 (C.D. Cal. Feb. 18, 2015) (same). In March 2020, Dr. Hadidchi reported normal motor strength in Plaintiff's extremities, intact sensation, and no evidence of clubbing, cyanosis, or edema. [AR 534-35.] While Plaintiff was briefly given a prescription for Tramadol and Cyclobenzaprine, he was advised to stopped taking those medications, as he reported that "his OTC medical marijuana works better to control his pain." [AR 536, 540.] Further, a May 2019 x-ray of Plaintiff's left shoulder showed no abnormalities, fracture or osseous injury. [AR 24, 26, 499, 506.] Thus, the ALJ's decision to discount Dr. Chow's opinion is supported by substantial evidence. [AR 468-72]; *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Because the ALJ's interpretation of the evidence is rational, the Court must defer to that interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Juarez v. Colvin*, No. CV 13-2506 RNB, 2014 WL 1155408, at *2 (C.D. Cal. Mar. 20, 2014) ("It is not the Court's role to second-guess an ALJ's rational interpretation of the evidence merely because plaintiff is able to proffer an alternative rational interpretation.").

      Plaintiff also challenges the ALJ's reliance on the opinion of the medical consultant, Dr. Rowland, who found that Plaintiff could perform light work with exertional, postural, and manipulative limitations. [Pl. Br. at 8; AR 103-06.] Plaintiff asserts that the ALJ was required to articulate how he considered the factors in addition to supportability and consistency (i.e., treatment relationship with Plaintiff, specialization, and other relevant factors) because he "ruled" Dr.

8

Rowland's opinion and Dr. Chow's opinion were "equally persuasive" by finding both opinions "partially persuasive." [Pl. Br. at 8-9]; *see* 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(c)(5), 416.920c(b)(3), (c)(3)-(c)(5). The ALJ, however, did not consider Dr. Rowland's and Dr. Chow's opinions to be equally persuasive. As discussed, the ALJ found that Dr. Chow provided "very little explanation" for his "conclusory" opinion, which was generally "not consistent with the other objective evidence in the record." [AR 26-27.] In contrast, the ALJ found that Dr. Rowland supported her opinion with an explanation of the medical evidence. [AR 26, 103-06.] The ALJ also adopted most of Dr. Rowland's findings but assessed a slightly more restrictive overhead reaching limitation.[4] [AR 21, 26, 103-06.] Because the ALJ did not find that Dr. Chow's and Dr. Rowland's opinions were "equally well-supported" and "consistent with the record," the ALJ did not err in failing to address the factors in addition to supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Thus, the ALJ's consideration of the medical opinion evidence is supported substantial evidence.

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ failed to properly consider his subjective symptom testimony. [Pl. Br. at 10-11.]

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. §§ 404.1529(c), 416.929(c). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which "could reasonably be expected to produce the pain or

---

[4] Dr. Rowland opined that Plaintiff's ability to reach overhead with the upper extremities bilaterally was "limited," whereas the ALJ found that Plaintiff could "never" reach overhead with the left upper extremity and could "frequently" reach overhead with the right upper extremity. [AR 21, 105.]

other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first step and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036; (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).

At the hearing, Plaintiff testified that he has had multiple bilateral shoulder dislocations. [AR 43-44.] Although he had left shoulder surgery in November 2017, he reported intense weakness, pain and numbness in his left hand and forearm. [AR 44.] Plaintiff also stated that he has right shoulder dislocations "very often," experiences numbness in his right hand, is unable to concentrate due to pain and depression, and has difficulty with activities such as tying his shoes, dressing, bathing, reading, and driving. [AR 45-47, 50-51.]

The ALJ rejected Plaintiff's testimony to the extent it conflicted with the RFC. [AR 22.] The ALJ first found that Plaintiff's testimony was unsupported by the objective medical evidence of record. [AR 22-23.] The ALJ may consider objective medical evidence when assessing a claimant's testimony. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Carmickle*, 533 F.3d at 1161. Here, although the record shows that Plaintiff underwent left shoulder surgery and has residual effects of left shoulder dislocations, right shoulder glenhumeral instability, and carpal tunnel syndrome, the ALJ noted that treating providers routinely observed mostly normal review of musculoskeletal systems, as discuss in detail above. [AR 23-25, 314, 347, 322, 498-99, 514, 518, 523, 534-35.] While the ALJ acknowledged that Plaintiff's left shoulder MRI and EMG study showed some abnormalities, the ALJ

also noted that a May 2019 x-ray of Plaintiff's left shoulder was normal. [AR 24, 506.] The ALJ's conclusion that Plaintiff's testimony regarding his chronic, debilitating pain and other symptoms was not entirely consistent with the medical evidence is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Although the medical evidence could give rise to inferences more favorable to Plaintiff, the ALJ's interpretation was rational and should be upheld. *See Burch*, 400 F.3d at 680.

The ALJ further found Plaintiff's testimony unpersuasive because of the "routine and conservative treatment" he received after his left shoulder surgery. [AR 25]; *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). As discussed above, after Plaintiff recovered from his left shoulder surgery, Plaintiff's treatment included primarily physical therapy, home exercises, bracing, OTC medical marijuana, and a single steroid injection in his left shoulder. [AR 23-25, 398, 400, 402, 499, 500, 536-40]; *see, e.g.*, *Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (explaining that the claimant's "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise" supported rejection of the claimant's testimony); *Wilson v. Colvin*, 583 F. App'x 649, 651 (9th Cir. 2014) (sporadic use of only medical marijuana for pain was a specific, clear and convincing reason for rejecting complaints of disabling pain). There was no recommendation for additional surgeries or more aggressive forms of treatment. Thus, the ALJ's reasons for discounting Plaintiff's testimony regarding the severity of his symptoms were specific, clear, and convincing and supported by substantial evidence. *See* 20 C.F.R. §§

404.1529(c)(3); 416.929(c)(3).

### C. Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to give adequate reasons for rejecting the testimony of his father, William N. [Pl. Br. at 11-12.]

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). An ALJ may discount lay witness testimony by providing reasons germane to each witness.[5] *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)); *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (concluding that an ALJ's valid reasons to reject claimant's testimony also applied to the lay statements).

Here, William N. testified that Plaintiff experiences daily pain and is unable to work or perform household activities. [AR 53-56.] As William N.'s testimony was substantially similar to Plaintiff's testimony, the ALJ's failure to provide reasons for rejecting William N.'s testimony was harmless error. [AR 45-47, 53-56]; *see Molina*, 674 F.3d at 1117 (the lack of error in articulating a reason to reject

---

[5] Regulations applicable to DIB and SSI claims filed after March 27, 2017, provide that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Ninth Circuit has not yet addressed whether the new regulations eliminate the need for the ALJ to articulate his reasons for discounting lay witness statements. *See Robert U. v. Kijakazi*, No. 3:20-cv-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022).

lay witness statements was harmless); *Valentine*, 574 F.3d at 694.

Accordingly, the ALJ's decision must be affirmed.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: December 16, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE